## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAKSHA SORATHIA,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| v. | : | No. 19-4253 |
| **FIDATO PARTNERS, LLC,** *et al.*, | : | |
| *Defendants.* | : | |
| **DAKSHA SORATHIA,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | |
| **FIDATO PARTNERS, LLC,** *et al.*, | : | NO. 19-6143 |
| *Defendants.* | : | |

**Goldberg, J.**                                                                                              **August 31, 2020**

### MEMORANDUM

Plaintiff Daksha Sorathia brings this lawsuit against her former employer Fidato Partners, LLC ("Fidato") as well as Fidato's Chief Executive Officer John Rapchinksi and Fidato's Chief Operating Officer Nichelle Shoreman (collectively "Defendants"), alleging denial of overtime compensation, gender discrimination, and retaliatory termination in response to protected expression. Plaintiff sets forth claims under the Civil Rights Act of 1964 ("Title VII"), the Fair Labor Standards Act ("FLSA"), the Equal Pay Act ("EPA"), and the Pennsylvania Minimum Wage Act ("PMWA").

Defendants have filed a Motion to Compel Arbitration urging that the controlling Employment Agreement mandates that this dispute be entirely resolved through arbitration. After

careful review of this Agreement, I conclude that Plaintiff's claims do not fall within the scope of its terms and, consequently, I will deny Defendants' Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

As explained below, Federal Rule of Civil Procedure 12(b)(6) applies to my review of the factual background. In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), I must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010). Therefore, the following facts are taken from Plaintiff's Complaints:

Defendant Fidato is "a consulting and recruiting employer providing placement(s) of its employees to third-party companies in the areas of accounting, risk management, and information technology primarily in the Mid-Atlantic region." Plaintiff Daksha Sorathia was hired by Defendants on or about June 10, 2019. Defendants placed Plaintiff at a third-party business Clairvate Analytics where she performed accounting duties for nearly three months. Defendants paid Plaintiff on an hourly basis at a rate of $55.00 per hour. (Compl., No. 19-cv-4253, ¶¶ 7, 12–15.)

Plaintiff alleges that, due to gender-based discrimination on the part of Defendants, this hourly rate was less than that of comparator male employees. Plaintiff also claims that she worked "overtime" for most of her employment, meaning in excess of forty hours per week, but that Defendants failed to adjust Plaintiff's hourly rate for those overtime hours. Plaintiff asserts that she received the same hourly pay for every hour worked over the course of her employment, irrespective of how many hours she had worked in any particular week. (Compl., No. 19-cv-4253 ¶¶ 7, 12, 14, 15, 17, 22; Compl., No. 19-cv-6143 ¶¶ 18–20.)

2

Upon observing that her overtime hours were not paid at an increased rate, Plaintiff raised concerns with Defendants, both verbally and in writing, that she was being paid below what was legally required for hourly employees. Plaintiff maintains that, as a W-2 employee, she is entitled to one and a half times the standard pay for those hours worked in excess of forty hours per week. (Compl., No. 19-cv-4253 ¶¶ 26–27.)

Within close temporal proximity to Plaintiff raising this issue, some of Defendants' other employees allegedly began to raise similar concerns as to their lack of overtime rate adjustment. In response, Defendants conducted in-person meetings with several of these employees. Throughout these interactions, Defendants maintained that Plaintiff and others were not entitled to overtime compensation as they were legally exempt based on the nature of their employment. According to Plaintiff, Defendants never adjusted the pay rates for overtime hours of Plaintiff or other similarly-situated employees who raised concerns. (Compl., No. 19-cv-4253 ¶¶ 24–28.)

On or about August 28, 2019, not long after Plaintiff first raised this overtime issue, Defendants terminated her employment. Plaintiff alleges that her termination was, in large part, retaliatory as a result of Defendants' perception that Plaintiff encouraged other employees to express concerns regarding Defendants' lack of adjusted overtime payment. Plaintiff also claims that her termination and failure to receive a full-time position offer were primarily the result of gender-based discrimination and that Defendant Fidato disproportionately offered permanent positions to comparator male employees. (Compl. No. 19-4253, ¶¶ 30–31; Compl. No. 19-cv-6143 ¶¶ 18–22.)

On September 16, 2019, Plaintiff filed this lawsuit alleging that her lack of adjusted overtime compensation and retaliatory termination violated the FLSA and PMWA. On December 27, 2019, Plaintiff filed a second lawsuit against only Defendant Fidato asserting that Plaintiff's

lower hourly rate based on her gender, the lack of a full-time employment offer, and retaliatory termination all violated Title VII and the EPA. On January 20, 2020, I administratively consolidated these two cases.

Defendants have filed this Motion to Compel Arbitration of all claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4. Defendants base their Motion on an arbitration clause within the "Employment Agreement" ("Agreement") that Plaintiff signed as a condition of her employment. (Defs.' Mot. to Compel Arbitration, Employment Agreement, Ex. A.)

## II.   STANDARD OF REVIEW

Motions to compel arbitration are assessed under either the Federal Rule of Civil Procedure 12(b)(6) standard for motions to dismiss or the Rule 56 standard for summary judgment. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013). As one court has explained:

> [W]here the complaint does not establish with clarity that the parties have agreed to arbitrate . . ., a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record. In such circumstances, the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists. Afterwards, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a Rule 56, summary judgment standard.

Torres v. Rushmore Serv. Ctr., LLC, No. Civ. A. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

The choice between these standards reflects the competing aims of the Federal Arbitration Act ("FAA"). Id. at 764. On one hand, the FAA's "interest in speedy dispute resolution" encourages application of the swifter Rule 12(b)(6) motion to dismiss standard, which consequentially avoids the "'inherent delay of discovery'" that results from the Rule 56 alternative.

4

Id. (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)). On the other hand, the United States Court of Appeals for the Third Circuit has stressed that at times a "more deliberate pace is required" for review of arbitrability disputes, calling for application of Rule 56. Guidotti, 716 F.3d at 744.

The primary indicator of which standard is appropriate is the complaint itself. See Silfee v. Automatic Data Processing, Inc., 696 F. App'x 576 (3d Cir. 2017). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. (quoting Guidotti, 716 F.3d at 776). If, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue" then courts should consider the motion to compel arbitration under a Rule 56 standard. Guidotti, 716 F.3d at 776 (quoting Somerset, 832 F. Supp. 2d at 482). Should a court apply the Rule 56 standard, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." Id.

Here, although the Complaints make no mention of the Employment Agreement or arbitration provision therein, that fact does not foreclose operation of a Rule 12(b)(6) standard. See Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n, No. Civ. A. 19-83, 2019 WL 2077731 at *3 (E.D. Pa. May 10, 2019) ("We are not compelled to apply a summary judgment standard because Ms. Asberry-Jones failed to mention the Arbitration Agreement in her complaint. Indeed, we cannot envision a plaintiff choosing to file a complaint in federal court will affirmatively plead the existence of an arbitration provision."). Defendants have attached the Employment Agreement to

5

their Motion to Compel Arbitration, Plaintiff does not dispute she received and signed the Employment Agreement containing the arbitration clause, and neither party has referenced additional facts beyond those set out in the Complaints and Employment Agreement. (Pl.'s Opp'n Mot. to Compel Arbitration 1.) Indeed, the crux of the dispute between the parties centers on the scope and enforceability of that arbitration agreement. Accordingly, I will apply the Rule 12(b)(6) standard to the Motion before me.

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In the context of a motion to compel arbitration, Rule 12(b)(6) requires that "courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision." Parker v. Briad Wenco, LLC, No. Civ. A. 18-04860, 2019 WL 2521537 at *2 (E.D. Pa. May 14, 2019), report and recommendation adopted, 2019 WL 2516059 (E.D. Pa. June 18, 2019) (quotations omitted). The court examines "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007). In addition, the court also "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

### III. DISCUSSION

Defendants seek to compel arbitration of all claims pursuant to an arbitration clause contained in a four-page document entitled "Employment Agreement, which states, in relevant part:

> Any controversy or claim arising out of or relating to this Agreement will be settled in Chester County, Pennsylvania, by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(Pl.s' Opp'n Mot. to Compel, Ex. A ("Agreement") ¶ 8.)

In order to compel arbitration under this provision, I must consider this Circuit's two-prong assessment, which requires that: (1) a valid arbitration agreement exists; and (2) such an agreement encompasses plaintiff's asserted claims. See John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). Plaintiff asserts that neither prong has been satisfied because the arbitration provision is invalid as unconscionable and, in any event, her claims fall outside the scope of the encompassing Employment Agreement. I address each argument individually.

#### A. Whether the Arbitration Clause of the Employment Agreement is Valid

While the Federal Arbitration Act ("FAA") generally requires that federal courts apply a "presumption in favor of arbitration," this predisposition "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Scott v. Educ. Mgmt. Corp., 662 F. App'x 126, 130 (3d Cir. 2016) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)). Rather, I must make a neutral determination as to whether the arbitration agreement satisfies principles of state contract law. Blair v. Scott Specialty Gases, 283

F.3d 595, 603 (3d Cir. 2002). Under Pennsylvania law,[1] the Agreement must satisfy the three requirements: "(1) a mutual manifestation of an intention to be bound; (2) terms sufficiently definite to be enforced; and (3) consideration." Reichner v. McAfee, Inc., No. Civ. A. 11-6471, 2012 WL 959365 at *3 (E.D. Pa. Mar. 21, 2012) (citing Kirleis, 560 F.3d at 160)).

Pennsylvania law holds that arbitration agreements are to be strictly construed and should not be extended by implication. When, however, the parties agree to arbitration in a clear and unmistakable manner, then every reasonable effort will be made to favor such agreements. Emmaus Mun. Auth. v. Eltz, 204 A.2d 926, 927 (Pa. 1964); Hudyka v. Sunoco, Inc., 474 F. Supp. 2d 712, 716 (E.D. Pa. 2007).

Plaintiff contends that the second requirement regarding sufficiently definite terms is not met due to the unconscionable language of the Agreement's arbitration clause. Id. Specifically, Plaintiff asserts that the arbitration clause lacks necessary "language suggesting an intelligent and knowing waiver of judicial rights." (Pl.'s Opp'n Mot. to Compel Arbitration 7.) Plaintiff argues that Pennsylvania courts have by implication trended towards more exacting standards on degree of detail an arbitration clause must include, especially regarding the waiver of one's right to sue in court. (Id.) In positing this argument, Plaintiff engages in an extensive discussion of New Jersey cases, which require that arbitration clauses in some way "convey that parties are giving up their right to bring their claims in court or have a jury resolve their dispute." (Id. at 7 (quoting Barr v. Bishop Rosen & Co., Inc., 126 A.3d 328, 332 (N.J. Super. 2015). Plaintiff notes that this line of New Jersey cases has been favorably cited by the Pennsylvania courts in Quiles v. Fin. Exch. Co.,

---

[1] The parties agree that Pennsylvania law governs the determination regarding the validity of the contract.

879 A.2d 281 (Pa. 2005), and Bucks Orthopaedic Surgery Associates, P.C. v. Ruth, 925 A.2d 868 (Pa. Super. Ct. 2007). (Id. 9–11.)

But neither Quiles nor Bucks adopted New Jersey's requirement that an arbitration clause contain explicit language regarding waiver of judicial rights or bearing of costs. And neither of these cases added any requirement for specificity or thoroughness beyond the well-established Pennsylvania standard that an arbitration provision be "clear and unmistakable."

Moreover, the facts in both cases are distinguishable from the contract at issue here. In Quiles, the former employee plaintiff not only "lack[ed] a command of the English language" and was "unfamilia[r] with the term arbitration," id. at 287, but more importantly she was "not even given the opportunity to read the terms of the arbitration agreement [as] there was no arbitration clause in the acknowledgment form signed by Quiles . . . ." Id. at 286. Rather, the arbitration agreement was included in an employee handbook which was never provided to plaintiff. Id. at 283. Nowhere in the Quiles opinion, other than a parenthetical reference to a New Jersey case, did the Pennsylvania Supreme Court mandate that an arbitration clause contain a specific reference to a waiver of judicial rights. Id. at 286.

Similarly inapposite are the circumstances of Bucks, wherein the Pennsylvania Superior Court held that the arbitration agreement was invalid as ambiguous. The arbitration agreement in that matter called for "binding" arbitration, but also included a provision explaining that "the parties hereto reserve the right to exercise any judicial remedies by appealing such an award to a court of competent jurisdiction, wherein the matter shall be heard *de novo*." Bucks, 925 A.2d at 870. Finding that an ambiguity existed and that the proper remedy was to construe the language of the contract against the drafter, the court found that the parties did not consent to final and binding arbitration, and the terms of the contract created a right to a *de novo* trial. Id. at 873. Again, the

Bucks court offered no indication that an arbitration provision must include language specifically waiving a right to judicial remedies.

Here, unlike Quiles or Bucks, the arbitration provision was reviewed and signed by Plaintiff and does not contain any ambiguity in its terms. Rather, the Agreement's arbitration clause states, with no accompanying limitation, that "[a]ny controversy or claim arising out of or relating to this Agreement will be settled . . . by arbitration." Id. This language is strikingly similar if not identical, to numerous arbitration clauses that have been found valid under Pennsylvania law in the context of employment agreements.  See, e.g., Hearon v. AstraZeneca LP, No. Civ. A. 02-3189, 2003 WL 21250640, at *1 (E.D. Pa. Mar. 24, 2003) (finding valid language that stated that stated, "[i]n the event of any dispute, controversy or claim (collectively referred to as "claim") arising out of or relating to any provision of this Contract or the Employee's Termination upon a CIC, such claim shall be settled by arbitration . . . ."); Kiesel v. LeHigh Valley Eye Ctr., P.C., No. Civ. A. 05-4796, 2006 WL 1985788 at *1 (E.D. Pa. July 12, 2006) (finding valid language that stated, "[a]ny controversy or disagreement between the parties to this Agreement shall be determined by an arbitration . . . ."); Smay v. E.R. Stuebner, Inc., 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004) (finding valid language that stated, "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration . . . ."). Nothing in these cases mandated that the arbitration agreement articulate the waiver of statutory rights.

The arbitration language at issue satisfies the requirements for an enforceable contractual agreement under Pennsylvania law.

### B. Whether the Employment Agreement Encompasses Plaintiff's Claims

I next decide whether this "particular dispute falls within the scope of that agreement." John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). The issue of scope is

10

substantive and subject to federal law as set out in the Federal Arbitration Act ("FAA"). See Mitsubishi Motors Corp. v. Soler Chrysler, 473 U.S. 614, 626 (1985). It is well established that courts, when addressing issues of scope under the FAA, must do so "with a healthy regard for the federal policy favoring arbitration." Id. Should a court find there to be "any doubts concerning the scope of arbitrable issues," such doubts "should be resolved in favor of arbitration." Id. (quoting Moses H. Cone Mem. Hosp., 460 U.S. 1, 24–25 (1983).

The federal inclination towards arbitration, it is not, however, without limits. "Regardless of whether the arbitration clause is broad or narrow . . . arbitration is still a creature of contract and a court cannot call for arbitration of matters outside of the scope of the arbitration clause." United Steelworkers of Am., AFL-CIO-CLC v. Rohm and Haas Co., 522 F.3d 324, 332 (3d Cir. 2008). A court cannot, for sake of actualizing a favorability towards arbitration, compel parties to arbitrate disputes which they did not agree to arbitrate. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010). Arbitration thus provides "a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." Id. (emphasis in original) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)).

Where arbitration is "simply a matter of contract between the parties," "ordinary state-law principles" will apply. First Options, 514 U.S. at 944. Accordingly, in assessing the issue of scope, "the proper starting point is the plain meaning of the [a]rbitration [a]greement." Steigerwalt v. Terminix Int'l Co., LP, 246 F. App'x 798, 801 (3d Cir. 2007). It is only in the event that "the [a]greement's plain meaning cannot be determined" that other contractual interpretative axioms are necessary. Id. I will therefore look to the plain meaning of the Agreement while taking care to respect "liberal federal policy favoring arbitration agreements." Moses, 460 U.S. at 24.

11

Here, a careful examination of the entire Agreement reveals that its scope primarily pertains to the handling of confidential information and restrictions on competition/solicitation. The Agreement also reflects that the parties did not intend to cover Plaintiff's allegations regarding Defendants' (a) failure to pay adjusted overtime compensation; (b) gender-based discrimination in payment and hiring practices; and (c) retaliatory termination of Plaintiff's employment in response to protected activity. I reach these conclusions for the following reasons.

First, the Agreement begins with three "WHEREAS" clauses which establish the scope of the employment issues that the Agreement covers. These WHEREAS clauses pertain to proprietary information and employee confidentiality:

> WHEREAS, you acknowledge that in the development of our business, we have expended considerable time, money, and effort in developing and maintaining confidential, proprietary, and trade secret information which, if disclosed or misused, could harm our business and competitive position;
>
> WHEREAS, you acknowledge that you will in the course of your employment with us have access to and/or obtain form us various confidential, proprietary, and trade secret information that would be of considerable value to our competitors; and
>
> WHEREAS, you acknowledge that we are entitled to take appropriate steps to ensure that: (i) our employees do not make improper use of confidential, proprietary, and/or trade secret information gained during the course of their employment with us; and (ii) no employee or competing entity gains an unfair competitive advantage over use.

(Agreement, at "WHEREAS" cls.) All three "WHEREAS" clauses alert and Plaintiff that her employment will expose her to "confidential, proprietary, [and/or] trade secret information," and that her employer will "take appropriate steps" to ensure proper use of this information. (Id.) While these "WHEREAS" clauses in and of themselves are not binding obligations, they are "explanations of the circumstances surrounding the execution of the contract" and are "useful as

an aid to interpretation." Mozdzierz v. Accenture, LLP, No. Civ. A. 06-3877, 2010 WL 4273323, at *6 (E.D. Pa. Oct. 29, 2010).

The ensuing "NOW THEREFORE" clause—which states that "for adequate consideration and intending to be legally bound, both parties hereby agree to the following terms and conditions"—frames the operative terms of the Agreement, which, as set forth below, focus almost entirely on issues regarding "confidential, proprietary, [and/or] trade secret information. (Agreement, at "NOW THEREFORE" cl.)

The substantive portion of the Agreement—aside from paragraph one (discussed below)—then deals almost exclusively with confidential and proprietary information. Paragraphs two to four of the Agreement, along with their multiple sub-paragraphs, impose restrictions on Plaintiff with respect to "Confidential Information," "Non-Competition," and "Non-Solicitation." (Id. ¶¶ 2–4.) These sections, comprising the substantive core of the Agreement, actualize the precise concerns reiterated throughout the "WHEREAS" clauses. And the remaining provisions that follow the arbitration provision deal with remedies, consideration, representations and warranties, arbitration, miscellaneous items, and definitions.

Importantly, nothing in any of these sections or anywhere else in the Agreement even remotely mentions the issues of hours, compensation, discrimination, and retaliation, which are the matters in dispute. Because the arbitration clause is limited to "[a]ny controversy or claim *arising out of or relating to this Agreement*," and Plaintiff's claims do not arise out of or relate to the Agreement, I decline to find that Plaintiff's claims fall within the scope of the arbitration clause.

In an effort to avoid this plain language interpretation of the Agreement, Defendants posit three arguments. First, they assert that because the Agreement is entitled "Employment Agreement," it necessarily covers all aspects of Plaintiff's employment. Second, they contend that

the presence of a provision within the Agreement characterizing Plaintiff as an "at-will" employee expands the scope of the Agreement to cover any dispute relating to her employment. Finally, Defendants suggest that "arising out of or relating to this Agreement" language of the arbitration provision should be deemed to encompass the cover letter attached to the Agreement—which explicitly sets out Plaintiff's wages. For the following reasons, I find no merit to any of these arguments.

        1.      Title of the Agreement

Defendants first rely on the Agreement's title to justify resolving all of Plaintiff's claims through arbitration. Defendants argue that in light of such a broad title—"Employment Agreement"—the Agreement "is designed to resolve *employment-related disputes* and requires that 'any controversy or claim' *relating to Plaintiff's employment* be settled by [arbitration]." (Defs.' Reply 4 (emphasis added).)

But again, the arbitration language is confined to only those issues with a nexus to the terms of the Agreement. Irrespective of what title the parties chose to give to the Agreement, the phrase "any controversy or claim" cannot be separated from the subsequent connecting language restriction, which directs that arbitration applies to claims "arising out of or relating to this Agreement." See Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1419 (2019) (Thomas, J., concurring) ("As our precedence makes clear and the Court acknowledges, the Federal Arbitration Act (FAA) requires federal courts to enforce arbitration agreements 'just as they would ordinary contracts: *in accordance with their terms*.'") (citation omitted). (emphasis added)

The title "Employment Agreement" cannot, accordingly, extend the scope of the embedded arbitration provision beyond its express circumscription to those disputes "arising out of this Agreement." Had Defendants intended to create an arbitration agreement that would extend to

Plaintiff's employment relationship more expansively, they could have included such language in the Agreement. See, e.g., Valentin v. ADECCO, 777 F. App'x 50, 51 (3d Cir. 2019) (affirming district court's decision to compel arbitration where the arbitration agreement stated "the Company and Employee agree that any and all disputes, claims, or controversies arising out of or relating to this Agreement, *the employment relationship between the parties*, or the termination of the employment relationship, shall be resolved by binding arbitration") (emphasis added); Donahue v. Bearingpoint, Inc., No. Civ. A. 05-2027, 2006 WL 208642, at *1 (E.D. Pa. Jan. 19, 2006) (compelling arbitration where contract required arbitration of "all claims or disputes arising out of or relating to . . . the *Employee's employment relationship with [the employer]* . . . or cessation of such employment relationship.") (emphasis added). Instead, Defendants chose to omit any language referencing the "employment relationship" and confined the reach of arbitration to issues "arising out of the Agreement," which, as noted above, pertains to proprietary information, confidentiality, and non-competition/non-solicitation.

Defendants cite to the case of Tripp v. Renaissance Advantage Charter, No. Civ. A. 02-9366, 2003 WL 22519433, at *5 (E.D. Pa. Oct. 8, 2003) for the proposition that arbitration language identical to that at issue here encompasses wage and hour claims and other Fair Labor Standards Act claims. This reliance is misplaced. The court in Tripp did not provide any explicit analysis of the controlling agreement to determine whether the controversy arose out of or related to the agreement. Without an analysis of the contractual terms of the agreement to which the arbitration clause referred, it is difficult to discern whether the agreement in Tripp was—like the Agreement before me—focused purely on confidentiality and non-compete issues or whether it also covered issues such as wages and hours. See also United Steelworkers of Am., AFL-CIO-CLC v. Rohm and Haas Co., 522 F.3d 324, 332 (3d Cir. 2008) (holding that although the arbitration

15

agreement was broad, "[w]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.") (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 656 (1986)).

In sum, the title of the Agreement alone cannot override the clear direction in the Agreement that claims subject to arbitration must arise out of or relate to the Agreement.

### 2. The "At-Will Employment" Clause

Defendants next argue that the "At-will Employment" clause, set forth in paragraph one of the Agreement, provides a nexus between Plaintiff's claims and the Agreement's terms so as to compel arbitration. The "At-will Employment" paragraph states:

> At-will Employment. You acknowledge that your employment is at-will. Accordingly, either you or we may terminate the employment relationship at any time, for any reason, should either party believes it is in his/her or its best interest to do so.

(Agreement ¶ 1.) Though Defendants do not assert that this paragraph pertains to all of Plaintiff's claims, they contend that the language providing that "[Defendants] may terminate the employment relationship at any time" encompasses claims regarding retaliatory termination, which are thus subject to arbitration. (Defs.' Mot. to Compel Arbitration 12.)

This argument could be persuasive if the "at-will" provision was considered in isolation. But, when read in context with the entire Agreement, Defendants' proffered interpretation directly conflicts with the paragraph's function in the Agreement as a whole. See Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 560 (Pa. Super. Ct. 2006) (holding that independent agreements thrown together without consideration of their combined effects") (citations omitted). Here, the "At-will Employment" paragraph is the first numbered paragraph of the Employment Agreement. (Id.) As discussed in detail above, it is preceded by three

"WHEREAS" clauses that unequivocally demonstrate that the scope of the Agreement concerns protection of confidential, proprietary, and trade secret information, not the terms of Plaintiff's employment. To interpret the "At-will Employment" paragraph as Defendants suggest would not only ignore the "combined effects" of the Agreement's terms, but would also fail to respect that "[a]rbitration is strictly a matter of consent." Granite Rock, 561 U.S. at 299. Although the Agreement concerns a limited subset of potential employment issues, Defendants' press an isolated reading of the "At-will Employment" paragraph that does not conform with those issues that the parties consented to arbitrate.[2]

    3.    <u>The Cover Letter to the Agreement</u>

Finally, Defendants imply that the Cover Letter to which Plaintiff's Employment Agreement was attached brings the current disputes within the scope of the arbitration provision. The Cover Letter states, in pertinent part:

> We are pleased to confirm an offer of employment to you in the position of Consultant, Accounting Services with Fidato Partners, LLC, (the "Company"). Your new position will commence on June 10, 2019. Below is a summary of our offer:
>
> - Your compensation will be an hourly rate of $55 paid semi-monthly during your employment;
> - Based on a start date of June 10, 2019, you will become eligible for medical, dental and vision benefits on August 1, 2019;

---

[2] Indeed, the presence of an "at-will" provision actually undermines any understanding that the parties were bound by an employment contract that governed all of the terms of Plaintiff's employment. It is well established in Pennsylvania that, "in the absence of an employment contract, an employment relationship is generally considered to be at-will, terminable by either party at any time and for any reason." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 646 (E.D. Pa. 2004). One of the ways in which a presumption of employment-at-will can be overcome is through an express contract between the parties. Raines v. Haverford Coll., 849 F. Supp. 1009, 1012 (E.D. Pa. 1994). Thus, the more persuasive interpretation of inclusion of the "at-will" provision here is that Defendants sought to ensure the maintenance of Plaintiff's presumption of at-will employment status despite the existence of an express contract between the parties regarding other matters.

> - You will be eligible to participate in the Company's 401(k) Plan, subject to certain eligibility requirements and Company practices, procedures and policies.
>
> Please note that the Company may modify your compensation and benefits from time to time as it deems necessary. Your employment is at-will, which means that either you or the Company may terminate the employment relationship at any time for any reason not prohibited by law.
>
> As a condition of your employment, you will be required to sign the enclosed Employment Agreement
> . . .
>
> Please countersign below to indicate your acceptance of our offer. . . .

(ECF No. 22-1.)

Under the express language of the Employment Agreement, the subject matter of the Cover Letter cannot alter the scope of the arbitration provision. The Agreement contains a "Miscellaneous" paragraph, which states that "[t]his document constitutes the entire agreement between the parties with respect to the subject matter hereof, supersedes all other prior communications and agreements, whether written or oral, and is binding upon [Plaintiff]. . . ." (Agreement ¶ 9.) Under Pennsylvania law, such clauses—also known as integration clauses—require that the written contract, if unambiguous, must be held to convey all agreements made prior to execution. Prior written agreements are inadmissible to explain the terms of the contract. Serino v. Prudential Ins. Co. of Am., 706 F. Supp. 2d 584, 591 (M.D. Pa. 2009). The language before me is therefore unambiguous in limiting the reach of the arbitration clause to only those terms included in the Agreement. Indeed, the fact that Defendants included terms regarding Plaintiff's hourly rate and employment benefits in a distinct document that independently required Plaintiff's signature, without including those same terms within the Agreement, further supports

my finding that the Agreement—and by extension, the arbitration provision—did not intend to cover those terms.

## IV. CONCLUSION

Although the arbitration provision here is valid, I find that Plaintiff's claims do not fall within its scope. While federal law favors arbitration, I am bound by the express terms which Defendants chose to include or omit in the Agreement. As Defendants elected to limit the arbitration clause to disputes "arising out of this Agreement," and as the Agreement is limited to restrictions on Plaintiff's competition and disclosure of confidential, proprietary, or trade secret information, I decline to conclude that Plaintiff's wage dispute, discrimination, and retaliation claims must be arbitrated under the terms of the arbitration provision. Therefore, I will deny Defendants' Motion to Compel Arbitration.